IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

WENDELL TATSUMI KOGA,
individually, as attorney in fact for
Ichiyo Eko Koga, and as trustee of the
William Tsugio Koga and Ichiyo Eko
Koga Revocable Living Trust, dated
February 4, 1991,

        Plaintiff,

  vs.

EASTERN SAVINGS BANK, FSB,


        Defendant.
_____

EASTERN SAVINGS BANK, FSB,

        Third-Party
        Plaintiff,

  vs.

WILLIAM J. VROOM; ALII
FINANCIAL CORPORATION;
PRIORITY ONE DEBT RELIEF
SERVICES, LLC; JANICE M. K.
GANITANO; and SONIA M. EVANS,

        Third-Party
        Defendants.

CIVIL NO. 11-00123 DKW-BMK

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT EASTERN SAVINGS BANK, FSB's MOTION FOR SUMMARY JUDGMENT AS TO COUNTS I–V OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT
EASTERN SAVINGS BANK, FSB'S MOTION FOR SUMMARY
JUDGMENT AS TO COUNTS I–V OF PLAINTIFF'S
<u>FIRST AMENDED COMPLAINT</u>**

## <u>INTRODUCTION</u>

Before the Court is Defendant Eastern Savings Bank, FSB's ("ESB")

Motion for Summary Judgment as to Counts I–V of Plaintiff's First Amended

Complaint ("Motion"), filed on May 15, 2013.  Plaintiff Wendell Tatsumi Koga

("Wendell Koga"), individually, as attorney in fact for Ichiyo Eko Koga ("Ms.

Koga"), and as trustee of the William Tsugio Koga and Ichiyo Eko Koga

Revocable Living Trust (collectively, "Plaintiff") opposed the Motion.  A hearing

was held on August 2, 2013.  After careful consideration of the supporting and

opposing memoranda, the accompanying documentation, and the relevant legal

authority, the Motion is hereby GRANTED as to Plaintiff's damages claims and

DENIED as to Plaintiff's rescission claim under Count I; GRANTED as to Counts

II, III, and IV; and DEEMED MOOT as to Count V because Plaintiff has

withdrawn that claim.

## <u>BACKGROUND</u>

This dispute arose out of a loan transaction initiated in 2008 between

ESB and Ms. Koga, in her capacity as trustee of her own revocable living trust.  At

the time of the loan transaction, Ms. Koga was 82 years old.  ESB's internal

records from February 12, 2008 describe Ms. Koga's representations to ESB as to

the purpose of the loan as follows:

> I spoke with Ichiyo Koga and she plans on using the proceeds
> to purchase a condo for her and her daughter (Janice Ganitano)
> to live in, she also wishes to gift 200k to her grandchild who is
> settling on a home in Washington state within the next 30 days.
> Ichiyo lives with her daughter who has agreed to go onto our
> loan.  Her daughter is in foreclosure and will be letting her
> home go to sale (but no sale date is set yet).  I also asked Ms.
> Koga why the appraisal and our bpo agent both noted that the
> property was noted as owner occupied.  She says that just
> within the last 30 days she has moved in to her daughter's
> because she will be renting out her home.  She collected a
> deposit in December and the tenants will occupy the property in
> the middle of February.

Paer Decl. Ex. A (ESB000863).

A few weeks after these representations, on or around March 6, 2008,

there is no dispute that Ms. Koga (in her capacity as trustee) signed a promissory

note, mortgage, assignment of rents and security agreement, and assignment of

leases, rents, and profits.  The loan was for $275,000 and was secured by a

mortgage on a home owned by Ms. Koga in Waipahu (the "Property").  Ms. Koga

also signed a universal residential loan application, where the purpose of the loan

was marked as "refinance" and the Property was characterized as "investment."

Kennedy Decl. Ex. 3 (ESB0233-36, 474-91, 500-03, 581).

Plaintiff selected Title Guaranty Escrow Services, Inc. ("Title

Guaranty") as the escrow company for the loan transaction.  Pursuant to the escrow

instructions, ESB wired $247,371.84 on March 4, 2008 (followed by an additional

$167.90 on March 7, 2008) to Title Guaranty's escrow account.  On March 11,

2008, Title Guaranty then wired the loan funds to a Bank of America account

belonging to Alii Financial Corporation ("Alii Financial"), which at the time was a

Hawai'i licensed mortgage broker, and the mortgage broker selected by Ms.

Ganitano.  Kennedy Decl. Ex. 6 (0000241); Hrg. Tr. 33:4.

        Although Plaintiff does not dispute that ESB paid the loan funds to

Alii Financial's account per the escrow instructions, Plaintiff disputes the validity

of the escrow instructions and argues that Ms. Koga's signature on those

instructions was forged, along with her signature on a rental agreement that was

submitted to ESB as part of the loan transaction, and a letter of refinancing

justification, dated February 15, 2008.  Josey Decl. at p. 1.  However, Plaintiff does

not assert that ESB had any involvement in any forgery of Ms. Koga's signature on

any documents, nor does Plaintiff contend that ESB had any knowledge of the

alleged forgery at the time of the loan transaction.[1]

        After the loan funds were transferred to Alii Financial, William

Vroom, the then-president of Alii Financial and a Hawai'i licensed mortgage

solicitor, apparently made some initial loan payments to ESB.  The payments from

---

[1] Wendell Koga stated that Ms. Ganitano, his sister and Ms. Koga's daughter, "kind of manipulated my mom into co-signing a note with my mom's house as collateral."  ESB Ex. 13; Wendell Koga Dep. 119:24–120:4.  Plaintiff's counsel alluded to the same at the hearing.  Hrg. Tr. 25:11–16.

Vroom and Alii, however, ultimately stopped[2] and ESB began sending loan default notices to Plaintiff at least as early as 2009.  William Koga Dep. 151:15–153:9. Upon inquiry from Mr. Koga, Ms. Ganitano initially said she would "take care of it," so Mr. Koga did nothing.  *Id.* at 152:3–18.  When ESB sent a foreclosure notice to Plaintiff in 2011, Mr. Koga, apparently for the first time, inquired into the details of the loan and sought representation.  *Id.* at 171:7–172:12.

On February 23, 2011, counsel for Plaintiff sent a letter to ESB purporting to rescind the loan, asserting that rescission was proper because ESB never made the material disclosures it was required to make under the Truth in Lending Act ("TILA").  Specifically, Plaintiff claimed that ESB did not provide notice of the right to cancel.  Paer Decl. Ex. B.  A few days later, on February 28, 2011, Plaintiff initiated this action.

On March 15, 2013, Plaintiff filed its First Amended Complaint ("Complaint"), asserting six counts:  (Count I) violations of TILA; (Count II) unfair and deceptive acts or practices ("UDAP") under Chapter 480 of the Hawaii Revised Statutes; (Count III) breach of contract; (Count IV) intentional and/or negligent misrepresentation; (Count V) unlicensed brokering; and (Count VI) Ms.

---

[2] In November 2008, Mr. Vroom was convicted in California of embezzlement, identify theft, and offering false documents to a government office.  He is presently serving a prison sentence in California.  Complaint Ex. D.

Koga's incompetence to enter into the loan contract.  ESB moves for summary

judgment on Counts I-V of the Complaint.

## STANDARD OF REVIEW

The purpose of summary judgment is to identify and dispose of

factually unsupported claims and defenses.  *See Celotex Corp. v. Catrett*, 477 U.S.

317, 323–24 (1986).  A party is entitled to summary judgment "if the movant

shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is

'material' when, under the governing substantive law, it could affect the outcome

of the case.  A 'genuine issue' of material fact arises if 'the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'"  *Thrifty Oil Co. v.*

*Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When evaluating a motion for summary judgment, the court must

construe all evidence and reasonable inferences drawn therefrom in the light most

favorable to the nonmoving party.  *See T.W. Elec. Serv., Inc. v. Pac. Elec.*

*Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).  Thus, the moving party

has the burden of persuading the court as to the absence of a genuine issue of

material fact.  *Celotex*, 477 U.S. at 323.  If the moving party satisfies its burden,

the nonmoving party must set forth "'significant probative evidence'" in support of

its position.  *T.W. Elec. Serv.*, 809 F.2d at 630 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).   "A party asserting that a fact cannot be or is genuinely disputed must support the assertion," and can do so by either "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

## DISCUSSION

### I.      Count I:  TILA Claim

ESB moves for summary judgment on Count I based on the contention that TILA does not apply to the loan transaction between ESB and Koga because the transaction was of a commercial nature.  Alternatively, ESB argues that even if TILA applies, summary judgment should be entered for ESB, at least as to Plaintiff's request for damages under Count I, because Plaintiff is barred by the statute of limitations from obtaining damages on the TILA claim.  The Court concludes that TILA does apply to the loan transaction at issue here. However, the statute of limitations expired for any claim of damages under TILA. Accordingly, summary judgment for ESB is proper on Plaintiff's claims for damages, but is denied for Plaintiff's rescission claim under TILA.

### A.   <u>The Loan is a Consumer Transaction</u>

ESB argues that the loan transaction was primarily commercial in nature because Ms. Koga stated and evidenced an intention to rent the Property and because the Uniform Residential Loan Application characterized the Property as an "investment."  However, ESB was plainly aware from the outset of the transaction that Ms. Koga's primary purpose for the loan had nothing to with any commercial activity.  There is no dispute that Ms. Koga told ESB that the purpose of the loan was to "us[e] the proceeds to purchase a condo for her and her daughter (Janice Ganitano) to live in."  Paer Decl. Ex. A (ESB000863, part of ESB's internal records of the loan transaction).  ESB's own representative, Linda Cashman, stated her understanding of the loan as follows:

> [Ms. Koga] was an 82-year-old woman, who lived by herself, and was interested in downsizing, moving out of the house that she had lived in by herself, and moving in with her daughter . . . [t]o buy a small condo and to help her daughter, who was in a financial hardship . . . .  So, her daughter was in a foreclosure situation.  She wanted to help her daughter.  She wanted to help her grand -- a grandchild, providing them some cash.  She wanted to downsize, buy a small condo for $100,000.  And I believe there were some small medical -- some small debts of her deceased husband that she intended to pay off.

Cashman Dep. 13:12-24.  Nothing in these representations indicated a "[c]redit transaction[] involving extensions of credit primarily for business, commercial, or agricultural purposes," that would render TILA inapplicable.  15 U.S.C. § 1603.  To the contrary, the Court concludes that ESB itself understood the loan to be

8

"primarily for personal, family, or household purposes."  15 U.S.C. § 1602(i).[3]

Even assuming, without finding, that Ms. Koga intended to rent the Property, this

fact would not alter the undisputed purpose that Ms. Koga had in mind for the

funds—to assist her daughter and grandchild, buy a smaller owner-occupied

residential property, and pay off the medical bills of her deceased husband.

ESB has had a full and fair opportunity to set forth its best evidence

on the nature of the loan.  Although Plaintiff has not filed a cross-motion for

summary judgment at this time, the Court determines, as a matter of law, that there

is no genuine issue of material fact that the loan by ESB to Ms. Koga was a

consumer loan for TILA purposes.  *Gospel Missions of America v. City of Los

Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) (quoting *Cool Fuel, Inc. v. Connett*,

685 F.2d 309, 312 (9th Cir. 1982) ("Even when there has been no cross-motion for

---

[3]  In its Motion, ESB also contends that TILA cannot apply because Ms. Koga's trust is the borrowing party to the transaction.  ESB contends that Ms. Koga's revocable living trust cannot be considered a "consumer" for TILA purposes because it is not a natural person as defined by the statute.  15 U.S.C. § 1602(i) (defining a consumer transaction as "as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes").  As ESB notes, however, this very question was carefully analyzed by Judge Samuel King in *Amonette v. Indymac Bank, FSB*, 515 F. Supp. 2d 1176 (D. Haw. 2007).  The Court agrees with and adopts here the interpretation and holding from *Amonette* that ownership through a revocable living trust does not disqualify the owner from TILA protection.  *Id.* at 1181-87. This is particularly so given the requirement to construe TILA liberally in favor of the consumer, *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1118 (9th Cir. 2009), and after considering Ms. Koga's stated purpose for this particular transaction, as discussed above.  *See Bloom v. I.C. System, Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) ("When classifying a loan [under the Consumer Credit Protection Act, of which TILA is a part], courts typically 'examine the transaction as a whole,' paying particular attention to 'the purpose for which [the] credit was extended in order to determine whether the transaction was primarily consumer or commercial in nature.' ") (quoting *Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir. 1980)) (second brackets in original).

summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.'").  Consequently, TILA applies to this consumer loan transaction.

**B.**     **Plaintiff's Claim for Damages Related to Failure to Disclose by ESB is Time-Barred**

Although the Court concludes that TILA is applicable to the loan transaction, ESB is entitled to summary judgment on Plaintiff's claims for damages.  Those claims are governed by a 1-year statute of limitations that expired long before Plaintiff initiated this lawsuit.

Damages (both statutory and actual damages) are recoverable under TILA for violations of disclosure requirements.  15 U.S.C. § 1640(a).  However, section 1640(e) imposes a 1-year statute of limitations on claims for damages.  That 1-year period typically "runs from the date of consummation of the transaction . . . ."  *King v. State of California*, 784 F.2d 910, 915 (9th Cir. 1986).  Further, the 1-year period applies to both actual and statutory damages.  *See Vietor v. Commonwealth Land Title*, 2010 WL 545856, at *3 (N.D. Cal. Feb. 11, 2010); *In re Wentz*, 393 B.R. 545, 553 (S.D. Ohio 2008).

There is no dispute that the loan transaction here was consummated on or around March 6, 2008 and the Complaint in this action was not filed until almost 3 years later, on February 28, 2011.  Plaintiff's only argument against the

applicability of the 1-year statute of limitations for damages is that the limitations period should be equitably tolled.  "[T]he doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King*, 784 F.2d at 915.  Here, however, even if Ms. Koga cannot be considered to have understood any TILA violations at the time of the transaction, Wendell Koga received default notices from ESB beginning in 2009, more than a year before the Complaint was filed in this action. Wendell Koga Dep. 151:15–153:9.  Once ESB sent the default notices, there is no dispute that Plaintiff discovered or could have reasonably discovered any potential TILA violations; yet Mr. Koga did nothing other than rely on the representations of Ms. Ganitano that she would "take care of it."  This level of diligence prevents the Court from applying the doctrine of equitable tolling beyond 2009.[4]

ESB is entitled to summary judgment on Plaintiff's claims for damages under TILA.

## C.  **Plaintiff's Rescission claim under TILA**

ESB's Motion does not address Plaintiff's claim for rescission under TILA, other than through ESB's overarching argument that TILA does not apply

---

[4] Indeed, at oral argument, Plaintiff's counsel conceded that the facts in support of equitable tolling were not particularly compelling.  Hrg. Tr. 33:17–24.

because of the commercial nature of the loan.[5]  The Court, however, has already

disposed of this argument and concluded that TILA does apply because this is

primarily a consumer transaction.  Consequently, ESB is not entitled to summary

judgment on Plaintiff's TILA claim to rescind the loan transaction.[6]

Going forward, and in considering the circumstances surrounding the

loan transaction, the Court instructs the parties that the equities may warrant that

Plaintiff repay the proceeds of the loan as a condition of rescission.  "[W]here [(as

here)] the creditor disputes the consumer's asserted ground for rescission,

rescission is not accomplished until a court determines that the consumer had the

right to rescind."  *Causey v. U.S. Bank Nat'l. Ass'n*, 464 Fed. Appx. 634, 635 (9th

Cir. 2011).  That determination is subject to the Court's equitable discretion to

consider all the circumstances, "including the nature of the violations and the

borrower's ability to repay the proceeds."  *Yamamoto v. Bank of New York*, 329

F.3d 1167, 1173 (9th Cir. 2003).  One prerequisite to a determination of a right to

rescind may be to require tender by the borrower of the proceeds received from the

lender.  *Id.* at 1171; *see, e.g., LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir.

---

[5] At the hearing, ESB's counsel conceded that the rescission claim under TILA was not time-barred under the 3-year statute of limitations applicable to the request to rescind (as opposed to the 1-year limitations period for the damages claim).  Hrg. Tr. 11:22–12:1.

[6] In its Reply brief, ESB argues for the first time that Plaintiff should be required to plead the ability to tender the proceeds of the loan as a condition of rescission.  The Court declines to consider this argument for purposes of this Motion.  *See* LR7.4 ("Any argument raised for the first time in the reply shall be disregarded.").

1976) (holding that rescission should be conditioned on repayment by the borrower because the TILA violations were not particularly egregious and because the equities favored the creditor).

The Court notes that in a February 23, 2011 letter to ESB, Plaintiff's counsel offered "to tender the appropriate rescission amount upon the creditor's performance of its statutory duties under the Truth in Lending Act."  Complaint Ex. B.  At oral argument, Plaintiff reiterated its willingness to tender the proceeds as part of any rescission.  Hrg. Tr. 15:16–21.  Assuming, without deciding, that these representations sufficiently establish Plaintiff's ability to repay the loan proceeds, rescission for the Plaintiff may be appropriate when (and if) that question is brought before the Court.

## II.   **Count II:  UDAP claim**

ESB moves for summary judgment on Count II based on the contention that TILA preempts the portions of the UDAP claim that merely reassert allegations of TILA violations.  ESB further posits that summary judgment on Count II is proper on any allegations not preempted by TILA because Plaintiff has provided insufficient evidentiary support for those allegations.  The Court concludes that Plaintiff's allegations of TILA violations under Count I preempt any allegations of TILA violations for Count II.  Further, Plaintiff has failed to satisfy its burden as a non-moving party to affirmatively provide evidence of a genuine

issue of material fact as to the remaining allegations included in Count II. Additionally, summary judgment is proper on the UDAP claim because of the disconnect in causation between any alleged act or omission by ESB and an injury to Plaintiff that is fairly traceable to ESB's conduct.

The substantive allegations of Plaintiff's UDAP claim appear in paragraphs 36–40 of the Complaint.  At the hearing and in its papers, Plaintiff's counsel conceded that any allegations of TILA violations in Count II (i.e., paragraph 36) are preempted.  Hrg. Tr. 20:1–4; *see Enriquez v. Countrywide Home Loans, FSB*, 814 F. Supp. 2d 1042, 1063 (D. Haw. 2011) ("TILA does preempt UDAP claims that are based on alleged TILA violations.").

It is also undisputed that Plaintiff has not provided any evidentiary support for paragraph 37 of the Complaint related to the terms of the loan. Wendell Koga Dep. 139:2–12.  Thus, Plaintiff has failed to satisfy its burden as a non-moving party to preclude summary judgment for these allegations.  Fed. R. Civ. P. 56(c)(1); *see Celotex*, 477 U.S. at 324.  Moreover, Plaintiff has failed to show how any misrepresentation as to the terms of the loan resulted in any injury to Plaintiff.  To recover under UDAP, "[a]ny injury must be fairly traceable to the defendant's actions."  *In re Kekauoha-Alisa*, 674 F.3d 1083, 1092 (9th Cir. 2012). Plaintiff does not contend that it was injured *because of* the allegedly unfair terms of the loan.  Consequently, the required causal link for a successful UDAP claim is

14

absent here.  *See Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n*, 113 Hawai'i 77, 114, 148 P.3d 1179, 1216  (2006) (recounting that one of the "three elements essential to recovery under [UDAP] . . . [is] injury to the plaintiff's business or property *resulting from* [a UDAP] violation" (emphasis added)).

The remainder of the UDAP claim (i.e., paragraphs 38–40) alleges that ESB knew or should have known that some of the loan documents contained the forged signatures of Ms. Koga and that ESB knew or should have known that Ms. Koga was not competent to enter into the loan transaction.  It is undisputed that ESB had no knowledge of any potentially forged loan documents.  Thomas J. Kennedy Decl. ¶ 10.  Moreover, Plaintiff has failed to satisfy its burden to affirmatively set forth some evidence that ESB knew or should have known about Ms. Koga's mental condition.  Wendell Koga Dep. 121:9–22.  Thus, Plaintiff fails to satisfy its burden as a non-moving party to preclude summary judgment for these allegations as well.  Fed. R. Civ. P. 56(c)(1); *see Celotex*, 477 U.S. at 324.

The Court therefore grants summary judgment to ESB in full as to Count II.

## III.  Count III:  Breach of Contract

ESB moves for summary judgment on Count III based on the assertion that ESB had no obligation to pay the loan funds directly to Ms. Koga, and ESB only transferred the money to Title Guaranty pursuant to the escrow

instructions.  Count III only states that "Defendant has breached the original loan agreement by failing to pay the proceeds of the loan to Eko."  Complaint ¶ 42.  The Court concludes that Plaintiff has failed to point to any contractual provision requiring ESB to pay the loan proceeds directly to Plaintiff, as opposed to depositing them in Title Guaranty's account pursuant to the escrow instructions.[7]  Plaintiff has provided no evidence of ESB's knowledge (or putative knowledge) that the escrow instructions may have contained a forged signature.

The Court therefore grants summary judgment for ESB on Count III.

## IV.   Count IV:  Intentional/Negligent Misrepresentation

ESB moves for summary judgment on Count IV because Plaintiff's factual allegations of Ms. Koga's incompetence are inconsistent with a showing of reliance by Ms. Koga necessary to support a claim of intentional or negligent misrepresentation.  The elements of intentional misrepresentation or fraud under Hawai'i law are as follows:  "(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them."  *Shoppe v. Gucci America, Inc.*, 94 Hawai'i 368,

---

[7] Plaintiff contends that the promissory note, which states that the funds will be loaned to Ms. Koga as trustee, is evidence of a requirement to pay the loan directly to Ms. Koga.  ESB Ex. 3 (ESB0233–36).  However, Plaintiff points to nothing requiring that a payee to a promissory note be the same individual or entity that receives the loan amount via the escrow instructions.  To the contrary, it is common for escrow instructions to direct that loan proceeds be paid to someone other than a party to the note (e.g., the seller of a home for which the money has been borrowed).

386, 14 P.3d 1049, 1067 (2000).  The elements of negligent misrepresentation

under Hawaiʻi law are as follows:  "(1) false information [was] supplied as a result

of the failure to exercise reasonable care or competence in communicating the

information; (2) the person for whose benefit the information is supplied suffered

the loss; and (3) the recipient relies upon the misrepresentation."  *Smallwood v.*

*Ncsoft Corp.*, 730 F. Supp. 2d 1213, 1231 (D. Haw. 2010).  Both claims have an

essential element of reliance.

Plaintiff alleges that "[a]t all times surrounding the making of this

loan, and at all times thereafter, Eko was incompetent to enter into the subject

transaction and incapable of understanding the terms of her loan and making

reasonable decisions about the loan . . . ."  Complaint ¶ 14.  To further this

allegation, Plaintiff sought out an expert opinion to establish that Ms. Koga lacked

the sufficient mental condition "at the time she signed the mortgage document."

ESB Ex. 13.  Simultaneously, Plaintiff tries to show that Ms. Koga was competent

and relied on alleged misrepresentations made by ESB.  However, the only support

Plaintiff points to for this showing is the loan documents and the declaration of

Charles Wheeler, which simply analyzed the loan terms.  Wheeler Decl. at pp. 1-2.

At the same time, Wendell Koga affirmatively stated that there was no evidence of

his mother's reliance on any misrepresentations.  Wendell Koga Dep. 129:1–4.

Consequently, Plaintiff has failed to set forth probative evidence to counter what

ESB has provided to show a lack of reliance.[8]  As a matter of law, because Plaintiff

has not established reliance, ESB is entitled to summary judgment on Plaintiff's

claims for intentional and negligent misrepresentation under Count III.[9]

### V.   Count V:  Unlicensed Brokering Claim

In the Memorandum in Opposition to the Motion, Plaintiff withdrew

this claim.  Consequently, the Court denies summary judgment on this claim as

moot.  Count V is no longer a part of this action.

### CONCLUSION

Defendant ESB's Motion for Summary Judgment as to Counts I–IV is

hereby GRANTED IN PART and DENIED IN PART.  The rescission portion of

---

[8] In reaching this conclusion, the Court is not making any determination as to whether Ms. Koga was in fact competent to enter into the loan transaction.  The Court's determination on Count III is based only on Plaintiff's failure to provide evidence to counter ESB's evidence that Ms. Koga did not rely on any alleged misrepresentations.

[9] Additionally, as laid out in the Memorandum in Opposition, the alleged misrepresentations by ESB all relate to the terms of the loan or ESB's failure to make required disclosures.  *See* Mem. in Opp. at 24-26 (listing misrepresentations related to (1) whether the loan was a fixed rate or balloon type; (2) ESB's failure to inform Ms. Koga of her right to rescind; (3) the high interest rate for a consumer loan; and (4) the change in Ms. Ganitano's status from co-borrower to guarantor).  The Court notes that claims of ESB's failure to make required disclosures are preempted by TILA, as discussed above.  *Kajitani v. Downey Sav. & Loan Ass'n, F.A.*, 647 F. Supp. 2d 1208, 1220 (D. Haw. 2008).  The Court further notes (also as discussed above) that Plaintiff has not established (or even argued) any injury that came about *because of* the alleged misrepresentations in the loan terms.

Count I remains.  Summary judgment as to Count V is denied as moot because the claim is withdrawn.  The Motion is GRANTED in all other respects.

IT IS SO ORDERED.

DATED:  HONOLULU, HAWAIʻI, August 19, 2013.



Derrick K. Watson
United States District Judge

<u>Koga v. Eastern Savings Bank;</u> CV 11-00123 DKW/BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT EASTERN SAVINGS BANK, FSB'S MOTION FOR SUMMARY JUDGMENT AS TO COUNTS I–V OF PLAINTIFF'S FIRST AMENDED COMPLAINT