IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| WENDELL TATSUMI KOGA, individually, as attorney in fact for Ichiyo Eko Koga, and as trustee of the William Tsugio Koga and Ichiyo Eko Koga Revocable Living Trust, dated February 4, 1991,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>EASTERN SAVINGS BANK, FSB,<br><br><br>　　　　Defendant.<br>_____<br>EASTERN SAVINGS BANK, FSB,<br><br>　　　Third-Party<br>　　　Plaintiff,<br><br>　vs.<br><br>WILLIAM J. VROOM; ALII FINANCIAL CORPORATION; PRIORITY ONE DEBT RELIEF SERVICES, LLC; JANICE M. K. GANITANO; and SONIA M. EVANS,<br><br>　　　Third-Party<br>　　　Defendants. | CIVIL NO. 11-00123 DKW-BMK<br><br>ORDER GRANTING WITH CONDITIONS PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE TILA RESCISSION CLAIM |

# ORDER GRANTING WITH CONDITIONS PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE TILA RESCISSION CLAIM

## INTRODUCTION

Before the Court is Plaintiff Wendell Tatsumi Koga's ("Wendell Koga"), individually, as attorney in fact for Ichiyo Eko Koga ("Ms. Koga"), and as trustee of the William Tsugio Koga and Ichiyo Eko Koga Revocable Living Trust (collectively, "Plaintiff"), Motion for Partial Summary Judgment as to the Truth in Lending Act ("TILA") Rescission Claim. Defendant Eastern Savings Bank, FSB ("ESB") opposed the Motion. A hearing was held on December 6, 2013. After careful consideration of the supporting and opposing memoranda, the accompanying documentation, and the relevant legal authority, the Motion is hereby GRANTED as to Plaintiff's rescission claim under Count I, although Plaintiff must tender $189,837.87 to ESB as a precondition of the rescission.

## BACKGROUND

The facts leading to this dispute were previously discussed by the Court in its Order Granting in Part and Denying in Part Defendant Eastern Savings Bank, FSB's Motion for Summary Judgment as to Counts I–V of Plaintiff's First Amended Complaint and can be referenced there. Dkt. No. 146, 2013 WL 4482426 (D. Haw. August 19, 2013) ("August 19 Order").

As a result of the Court's August 19 Order, Plaintiff's only surviving claims are the rescission portion of the TILA claim ("rescission claim")(Count I) and the claim challenging Ms. Koga's competence to enter into the loan agreement with ESB (Count VI). Plaintiff now moves for summary judgment as to the rescission claim.

## STANDARD OF REVIEW

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). Thus, the moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party satisfies its burden,

the nonmoving party must set forth "'significant probative evidence'" in support of its position. *T.W. Elec. Serv.*, 809 F.2d at 630 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion," and can do so by either "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

## DISCUSSION

This Court analyzes (1) whether Plaintiff (regardless of any equitable conditions the court may impose on rescission) has a right to rescind the loan; and (2) if Plaintiff has a right to rescind, what equitable conditions should be placed on that rescission. The Court addresses these two issues in turn and concludes that while Plaintiff has a right to rescind, an equitable condition of that rescission requires Plaintiff to first tender to ESB $189,837.87.

**I.     Plaintiff's Right to Rescind**

Under 15 U.S.C. § 1635(a), a borrower has a right to rescind a consumer credit transaction that provides for a security interest in any property used as the borrower's principal dwelling. The borrower has "until midnight of the third business day following consummation of the transaction or the delivery of the

information and rescission forms" to exercise that right. *Id.* However, when a lender fails to disclose to a borrower his or her right to rescind, or fails to provide material disclosures, the duration of the borrower's right to rescind extends for three years from the date the transaction was consummated. 12 C.F.R. § 226.23(a)(3); *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989). TILA defines "material disclosures" as disclosures of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of all payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by Section 1639(a). 15 U.S.C. § 1602(u).

Even a purely technical violation of TILA's disclosure provisions, such as the failure to provide a borrower with two copies of the notice that include the correct date that the rescission period expires, extends the duration of the right to rescind for three years. *See Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 703–05 (9th Cir. 1986). TILA requires that loan documents state specifically the last date on which a borrower may rescind the loan agreement without penalty. *Id.* at 701; 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b). If, as here, the lending institution fails to provide the Notice of a Right to Rescind or Notice of Right to Cancel altogether, the borrower may rescind the loan within

5

three years after it was consummated. *Semar*, 791 F.2d at 701–702; *see* 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first."); *see also* 15 U.S.C. § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction.").

As a threshold matter, there is no dispute, and the parties have stipulated, that ESB never provided Plaintiff with a Notice of Right to Cancel or a Notice of Right to Rescind. Cashman Dep. 7:25–8:3; ESB's CSF ¶ 8. These failures were violations of TILA. *See* 12 C.F.R. § 226.23(a)(2). Moreover, there is no dispute that Plaintiff provided a notice of rescission to ESB within the three-year time limit prescribed by the TILA regulations. Decl. of John Paer ("Paer Decl."), Ex. D (Feb. 23, 2011 Rescission Letter); *see* 12 C.F.R. § 226.23(a)(3). Accordingly, ESB's arguments against Plaintiff's right to rescind are solely equitable in nature. ESB asserts that the circumstances of the loan transaction, in particular the falsified documents, counsel against permitting rescission.

In its briefing and at oral argument, ESB suggests that the Washington Court of Appeal's decision in *Conrad v. Smith*, 712 P.2d 866 (Wash App. 1986), supports the notion that Plaintiff should not be allowed to rescind here. The Court, however, is not persuaded by *Conrad*. In that case, the Washington Court of

6

Appeals determined that the loan in question was made for commercial purposes and that, consequently, TILA did not even apply. *Id.* at 869–870. This Court has already resolved the question of the applicability of TILA to the loan in the instant case in its August 19 Order. The Court agrees with *Conrad* to the extent that it suggests that the conditions of rescission are subject to the Court's equitable discretion to consider all the circumstances, "including the nature of the violations and the borrower's ability to repay the proceeds." *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1173 (9th Cir. 2003). Those considerations are discussed below. However, as an initial matter, the Court concludes that ESB's undisputed TILA violations and Plaintiff's Notice of Rescission triggered a right to rescind that is subject only to equitable conditions discussed below.[1]

## II.     **Equitable Conditions of Rescission**

In considering equitable conditions on Plaintiff's rescission, the Court determines (A) whether Plaintiff is required to tender the loan proceeds in order to rescind; and (B) if tender is required, the appropriate amount of the tender. The

---

[1] ESB also argues that Plaintiff does not have a right to rescind because Plaintiff failed to affirmatively plead the ability to tender the loan amount. Opp. at 12–13. However, Ex. B (February 23, 2011 Rescission Letter) to the First Amended Complaint ("FAC"), which was referenced and incorporated into the FAC, FAC ¶ 23, provided adequate notice to ESB of Plaintiff's ability to tender as part of its rescission claim. FAC Ex. B at 2 ("[Plaintiff] hereby offers to tender the appropriate rescission amount upon the creditor's performance of its statutory duties under the Truth in Lending Act."); Fed. R. Civ. P 10(c). This satisfies the notice pleading requirements of Fed. R. Civ. P. 8 and this is not a case where the debtor did not allege at all the ability to tender the proceeds of the loan. *See e.g., Hogan v. NW Trust Servs., Inc.*, 441 Fed. Appx. 490 (9th Cir. 2011); *Garza v. Am. Home Mortgage*, 2009 WL 188604, at *5 (E.D. Cal. Jan. 27, 2009) (dismissing a rescission claim because "[t]he complaint fails to hint" that the plaintiff could tender the loan proceeds).

7

Court concludes that Plaintiff is required to tender the loan amount to ESB as a precondition to rescission and that the appropriate amount of the tender is $189,837.87.

### A. Condition of Tender

Once a transaction is rescinded under TILA, one of the procedural effects of rescission is that "the consumer shall tender the money or property to the creditor . . . ." 12 C.F.R. § 226.23(d)(3); *see Semar*, 791 F.2d at 705 ("On rescission, the security interest is dissolved and the borrower returns 'the property'—in this case the loan proceeds—to the lender." (quoting 15 U.S.C. § 1635(b)). However, the procedural sequence may be modified by the court:

> As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures *after* deciding that rescission is warranted, may not do so *before* deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds.

*Yamamoto*, 329 F.3d at 1173; 12 C.F.R. § 226.23(d)(4); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir. 1974) (holding that rescission should be conditioned on the borrower's tender of loan funds first because of non-egregious TILA violations and because the equities favored the lender).

Plaintiff contends that tender should not be required for rescission in this case because Ms. Koga herself never actually received any of the proceeds of the loan and because ESB's TILA violations were egregious. ESB counters that tender should be required because Ms. Koga's agent received the proceeds of the loan and because ESB's TILA violations were technical and not egregious. The Court concludes that there is no genuine dispute that Mr. Vroom, an agent of Ms. Koga, received the proceeds of the loan. Further, ESB's TILA violations, though substantial, were based on its mistaken belief that the transaction was commercial, and were therefore not egregious. Consequently, tender is required in order to effectuate any rescission.

The Court concludes that for purposes of considering the equities of requiring tender prior to rescission, Ms. Koga received the proceeds of the loan via her agent Mr. Vroom. There is no dispute that Ms. Koga initiated the loan transaction between ESB and herself, in her capacity as trustee of her own revocable living trust. She represented to ESB that she wanted to take out the loan "to purchase a condo for her and her daughter (Janice Ganitano) to live in, [and] also . . . to gift 200k to her grandchild who is settling on a home in Washington state within the next 30 days." Paer Decl. Ex. B (ESB000863). There is also no dispute that a few weeks after these initial discussions with ESB, Ms. Koga (in her capacity as trustee) signed a promissory note, mortgage, assignment of rents and

9

security agreement, assignment of leases, rents, and profits, and a universal residential loan application.

Accordingly, Ms. Koga was very much aware of the circumstances of her loan and naturally would have expected the proceeds of the loan to be in her custody or control within a brief period of time after the documentation was finalized. However, following ESB's payment of the loan proceeds into escrow, and the subsequent distribution of those escrow proceeds to Mr. Vroom, there is no evidence that Plaintiff or Ms. Koga ever contacted ESB to inquire what happened to the loan funds—evidence that seems necessary here to indicate that the funds were not sent to where Ms. Koga wanted them to go. Instead, once payments stopped on the loan,[2] ESB began sending loan default notices to Plaintiff at least as early as 2009. William Koga Dep. 151:15–153:9. Even then, it was not until ESB sent a foreclosure notice in 2011 that Plaintiff, for the first time, inquired into the details of the loan and sought representation. *Id.* at 171:7–172:12.

Thus, the circumstances surrounding the loan transaction simply do not support Plaintiff's argument here that Ms. Koga received no proceeds of the loan. Had Mr. Vroom not been Ms. Koga's agent to receive the funds, any reasonable person would have inquired with ESB as to the whereabouts of the loan

---

[2]The undisputed fact that Mr. Vroom made some payments on the loan only furthers the notion that the money went to where Ms. Koga wanted it to go. There is thus no validity to Plaintiff's argument that Ms. Koga did not receive any proceeds of the loan.

proceeds. That did not happen here and it was, in fact, several years before Plaintiff, triggered by ESB's foreclosure notices, began looking into the loan that Ms. Koga had entered into.[3]

The Court also concludes that ESB's TILA violations do not rise to the level of eliminating the requirement of tender prior to rescission. ESB, though plainly mistaken as to the nature of the transaction (as discussed in the Court's August 19 Order), treated the loan as commercial, and, thus, from the beginning had no understanding of the need to comply with TILA. This mistake resulted in the TILA violations warranting rescission here. But the Court does not agree with Plaintiff that these violations were so "egregious" that doing away with a requirement of tender would be equitable. *See, e.g.*, *Ljepava v. M.L.S.C. Prop., Inc.*, 511 F.2d 935, 941 (9th Cir. 1975) (finding violations "egregious," but still upholding a requirement of repayment, where the disclosure statement understated the annual percentage rate by almost half, did not explain how charges for late payments were to be calculated, and failed to explain each element of the finance charge).

In considering and balancing the equities of the transaction, the Court modifies the sequence of rescission events pursuant to 12 C.F.R. § 226.23(d)(4)

---

[3]The Court determines that the alleged forgery of documents has no bearing on whether Ms. Koga actually received the proceeds of the loan from ESB because there is no dispute that Ms. Koga did in fact initiate the loan and filled out a significant portion of the loan paperwork.

11

and imposes a condition on Plaintiff to tender the loan proceeds prior to rescission of the loan transaction. *Yamamoto*, 329 F.3d at 1172–73. The specific tender amount is discussed below.

### B. **Tender Amount**

Initially, the Court notes that Plaintiff has sufficiently represented that he has the ability to pay any amount that the Court might reasonably require for tender as a condition of rescission:

> Plaintiff has the ability to fulfill any tender requirement as our home is presently worth more than $500,000.00. In addition, we have approximately $200,000.00 in cash reserves to pay a tender amount, though that money should be used to care for my mother.

Decl. of Wendell Tatsumi Koga ¶ 15. Defendants counter that this is insufficient to show an ability to tender the loan proceeds. However, having modified the sequence of rescission events (as discussed above) and now requiring tender by Plaintiff prior to rescission, the need for substantial proof of an ability to tender is minimal. If Plaintiff is unable to actually tender the loan amount, there will be no rescission. As such, the Court finds that Plaintiff's representations of an ability to tender are sufficient.

As to the appropriate amount of tender, the parties do not differ dramatically. Plaintiff argues that the proper amount to tender is $156,348.06, while Defendants assert that the correct amount is $189,837.87. Both parties cite

to the Ninth Circuit's decision in *Semar* for the formula to calculate the tender amount for rescission: "the loan amount less all charges in the loan agreement." 791 F.2d at 705. The parties do not dispute the following initial calculations of the tender amount, which include the payments made by Mr. Vroom on the loan:

| Principal Loan amount | $275,000.00 |
| Principal Paid | ($2,883.46) |
| Interest Paid | ($71,232.55) |
| Late Charges Paid | ($6,898.09) |
| Other Charges Paid | ($45.00) |
| | |
| Interim Amount Owed | $193,940.90 |

Motion at 14; Opp. at 39–40. The amount in dispute (i.e., whether it should be excluded from the tender amount) is the $37,592.84 ("settlement amount") reflected in the March 11, 2008 HUD-1 Settlement Statement. Paer Decl. Ex. F (March 11, 2008 HUD-1 Settlement Statement) at TG0000155–0000156 (listing and breaking down the $37,592.84 in settlement charges "paid from borrower's funds at settlement"). Plaintiff argues that this amount should be deducted in full from the $193,940.90 interim figure from the table above, creating a final tender amount of $156,348.06. ESB, however, contends that not all of the settlement charges are directly associated with the "loan agreement" and would therefore be forbidden by the formula laid out by *Semar*. ESB posits that some of the charges from the settlement statement should not be subtracted in calculating the tender

13

amount for rescission. Those amounts are discussed below, and the Court agrees with ESB that the final amount of tender should be $189,837.87.

ESB argues that six of the items in the settlement statement should not be deducted. ESB concedes, and thus there is no dispute, that 17 of the items from the settlement statement (that ESB lists in the chart on pages 36–37 of its Memorandum in Opposition) should be subtracted out of the $193,940.90 interim amount owed from the table above. Applying those undisputed calculations, the updated amount owed is the following:

| | |
|---|---|
| Interim Amount Owed (taken from table above) | $193,940.90 |
| Loan Discount | ($5,500.00) |
| Appraisal | ($668.27) |
| Credit Report | ($11.05) |
| Doc Prep Fee | ($500.00) |
| Tax Service Fee | ($67.00) |
| Mortgage Broker Fee | ($6,155.42) |
| Courier Fee | ($5.00) |
| Review Fee | ($250.00) |
| Underwriting Fee | ($750.00) |
| Loan Processing Fee | ($350.00) |
| Flood Certification Fee | ($16.00) |
| Pre-Paid Interest | ($2,182.70) |
| Escrow Fee to TGES | ($491.20) |
| Notary Fee to TGES | ($10.00) |
| Title Insurance Premium | ($1,271.60) |
| Recording Charges | ($126.00) |
| Mailing Fee to TGES | ($52.36) |

| | |
|---|---|
| Updated Amount Owed | $175,534.30 |

What remains are six charges from the settlement statement that create the discrepancy in the tender amount between Plaintiff and ESB. The largest single amount is $17,322.00 for Escrow/Holdback Interest Reserve. Paer Decl. Ex. F (March 11, 2008 HUD-1 Settlement Statement) at TG0000156. The Court concludes that this amount should not be deducted out of the $175,534.30 amount because it was already accounted for in the initial subtraction of $71,232.55 above for interest paid. Decl. of Thomas J. Kennedy ("Kennedy Decl.") ¶ 11. Plaintiff has provided no evidence or argument to rebut this point. Accordingly, the tender remains at $175,534.30.

Similarly, the five remaining items from the settlement statement, all of which are payments made by ESB for insurance premiums or property taxes, should not be deducted from the tender amount. *See* Paer Decl. Ex. F (March 11, 2008 HUD-1 Settlement Statement) at TG0000156 (listing amounts for an escrow hazard insurance premium, a regular hazard insurance premium, an escrow flood insurance premium, a regular flood insurance premium, and county property taxes while in escrow). In rescinding a transaction and calculating the amount to tender, "TILA specifically states that the borrower 'is not liable for any finance or other charge.'" *Semar*, 791 F.2d at 705 (quoting 15 U.S.C. § 1635(b)). Specifically,

insurance premiums or other charges "for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss" are included in the definition of a finance charge and should thus be deducted from a tender amount. However, insurance premiums for the benefit and protection of the borrower are not included in the definition of a finance charge and are not a loan expense to be deducted under the formula set out in *Semar*. Neither are property taxes.

      Defendants argue, and Plaintiff does not counter, that these insurance premiums, and the payment by ESB of county property taxes, would have been the responsibility of Plaintiff had the loan transaction not occurred. The Court agrees that these insurance premiums and property taxes were the Plaintiff's payment obligations regardless of any loan transaction. Accordingly, because "[t]he equitable goal of rescission under TILA is to restore the parties to 'status quo ante,'" *Am. Mortg. Network, Inc. v. Morales*, 2012 WL 1020191, at *4 (C.D. Cal. Mar. 26, 2012), these amounts should also not be deducted from the tender amount, which thus remains at $175,534.30.

      Finally, ESB asserts that over the course of the loan, it paid a total of $23,550.43 in real property taxes and insurance premiums (insurance that was for the protection of Plaintiff and would have existed regardless of the loan), of which $9,246.86 was reimbursed from escrow funds to ESB, leaving an unreimbursed balance of $14,303.57 in real property taxes and insurance premiums that ESB

paid on behalf of Plaintiff. Kennedy Decl. ¶ 10. Similar to the insurance premiums and county property taxes discussed in the preceding paragraphs, these payments would have been made by Plaintiff in the absence of the loan transaction. Plaintiff has not brought forth any evidence or argument to contradict this. Consequently, $14,303.57 is added in to the $175,534.30 amount, bringing the final amount to be tendered to $189,837.87.

Plaintiff requests that the Court allow a reasonable amount of time for Plaintiff to tender the required amount. The Court consequently grants Plaintiff ninety (90) days from the date of this Order to repay the tender amount of $189,837.87 to ESB. The loan shall not be rescinded, and ESB shall not be required to release its security interest in the property, until Plaintiff has actually tendered repayment. *See Riopta v. Amresco Res. Mortg. Corp.*, 101 F. Supp. 2d 1326, 1336 (D. Haw. 1999).

## CONCLUSION

The Court hereby GRANTS WITH CONDITIONS Plaintiff's Motion for Partial Summary Judgment as to the TILA Rescission Claim. Plaintiff is entitled to summary judgment on its rescission claim, but must first tender

$189,837.87 to ESB, which tender should be made within ninety (90) days of the date of this Order.

       IT IS SO ORDERED.

       DATED:  HONOLULU, HAWAIʻI, January 10, 2014.



_____
Derrick K. Watson
United States District Judge

---

Koga v. Eastern Savings Bank; CV 11-00123 DKW/BMK; ORDER GRANTING WITH CONDITIONS PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE TILA RESCISSION CLAIM