O·CONNOR PLAYDON & GUBEN LLP
A LIMITED LIABILITY LAW PARTNERSHIP
JERROLD K. GUBEN 3107-0
JEFFERY S. FLORES 8691-0
733 Bishop Street, Suite 2400
Honolulu, Hawaii 96813
Telephone: (808) 524-8350
Facsimile: (808) 531-8628
jkg@opglaw.com; jsf@opglaw.com

TOM PETRUS & MILLER LLLC
LYLE M. ISHIDA 4529-0
1164 Bishop Street, Suite 650
Honolulu, Hawaii 96813
Telephone: (808) 792-5800
Facsimile: (808) 792-5809
lishida@tpm-hawaii.com

Attorneys for Defendant and
Third-Party Plaintiff
EASTERN SAVINGS BANK, FSB

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WENDELL TATSUMI KOGA, individually, as attorney in fact for Ichiyo Eko Koga, and as trustee of the William Tsugio Koga and Ichiyo Eko Koga Revocable Living Trust, dated February 4, 1991,<br><br>　　　　　　　Plaintiff,<br>　　vs.<br><br>EASTERN SAVINGS BANK, FSB,<br><br>　　　　　　　Defendant. | CIVIL NO. CV11-00123 DKW/BMK<br><br>FINDINGS AND RECOMMENDATION TO GRANT DEFENDANT AND THIRD-PARTY PLAINTIFF EASTERN SAVINGS BANK, FSB'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST THIRD-PARTY DEFENDANTS WILLIAM J. VROOM, ALII FINANCIAL CORPORATION, PRIORITY ONE DEBT RELIEF SERVICES, LLC, AND JANICE M.K. GANITANO; EXHIBIT "A" |

| | |
|---|---|
| EASTERN SAVINGS BANK, FSB,<br><br>      Third-Party<br>      Plaintiff.<br><br>  vs.<br><br>WILLIAM J. VROOM, ALII<br>FINANCIAL CORPORATION;<br>PRIORITY ONE DEBT RELIEF<br>SERVICES, LLC; JANICE M.K.<br>GANITANO; and SONIA EVANS<br><br>      Third-Party<br>      Defendants. | HEARING:<br>Date:  March 20, 2014<br>Time:  3:00 p.m.<br>Judge:  Honorable Barry M. Kurren |

**FINDINGS AND RECOMMENDATION TO GRANT DEFENDANT AND THIRD-PARTY PLAINTIFF EASTERN SAVINGS BANK, FSB'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST THIRD-PARTY DEFENDANTS WILLIAM J. VROOM, ALII FINANCIAL CORPORATION, PRIORITY ONE DEBT RELIEF SERVICES, LLC, AND JANICE M.K. GANITANO**

Defendant and Third-Party Defendant EASTERN SAVINGS BANK, FSB's ("Eastern") Motion for Entry of Default Judgment Against Third-Party Defendants William 1. Vroom, Alii Financial Corporation, Priority One Debt Relief Services, LLC, and Janice M.K. Ganitano, filed herein on January 30, 2014 ("Motion"), having come on for hearing before the Court, the Honorable Barry M. Kurren, Magistrate Judge, presiding, with Jeffery S. Flores appearing for Eastern and there being no appearance and no written submission by or on behalf of Third-Party Defendants William J. Vroom ("Mr. Vroom"), Alii Financial Corporation

("Alii Financial), Priority One Debt Relief Services, LLC ("Priority One") and Janice M.K. Ganitano ("Ms. Ganitano") (collectively "Third-Party Defendants"), the Court, after full consideration of Eastern's Motion and the entire record herein, makes the following Findings and Recommendation:

## FINDINGS OF FACT

1. This Court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367 based on the underlying complaint which has jurisdiction pursuant to 15 U.S.C.A. § 1640(e) and 1692k, and 28 U.S.C.A. § 1331, 1332 and 1337. Venue is proper in this District under 28 U.S.C. § 1391(a) and (c).

2. Eastern filed its Third-Party Complaint on August 14, 2012.

3. The Third-Party Defendants were each served the initial Third-Party Complaint in 2012.

4. Eastern filed its First Amended Third-Party Complaint on June 4, 2013.

5. More than twenty-one (21) days have elapsed since the service dates of June 15, 2013 for Ms. Ganitano, August 4, 2013 for Mr. Vroom and September 8, 2013 for both Alii Financial and Priority One, excluding the date of service, and the time to answer or otherwise defend against Eastern's First Amended Third-Party Complaint was not extended.

6. Third-Party Defendants have failed to appear or otherwise respond to Eastern's First Amended Third-Party Complaint and the time to do so as provided by the Federal Rules of Civil Procedure has expired.

7. Third-Party Defendant Ms. Ganitano is a citizen and resident of the State of Hawaii.

8. Third-Party Defendant Mr. Vroom was, at all times relevant herein, a licensed Mortgage Solicitor in the State of Hawaii.

9. Third-Party Defendant Alii Financial Corporation was at all times relevant herein, a California corporation registered to do business in the State of Hawaii.

10. Third-Party Defendant Priority One Debt Relief Services was at all times relevant herein a California limited liability company.

11. None of the Third-Party Defendants are infants, incompetent persons, or in active military service.

12. On January 17, 2014, the Clerk of this Court entered the default of Third-Party Defendants.

13. This is an action based on an underlying $275,000 loan ("Loan") made to the William Tsugio Koga and Ichiyo Eko Koga Revocable Living Trust, dated February 4,1991, a Hawaii Trust (hereinafter "Trust") on March 6,2008.

14. The Loan was evidenced by a Promissory Note signed by Mrs. Koga as Trustee of the Trust, in the principal amount of $275,000 for consideration of Eastern's Loan.

15. The Loan was secured by a Mortgage, Assignment of Rents and Security Agreement, signed by Mrs. Koga as Trustee of the Trust ("Mortgage").

16. At the time the Loan was made, Ms. Ichiyo Koga ("Mrs. Koga") or Mrs. Ganitano were the trustees of the Trust.

17. Ms. Ganitano is the daughter of Mrs. Koga.

18. Plaintiff, Mr. Vroom was a mortgage solicitor retained by the Trust.

19. Mr. Vroom was the registered agent for Priority One and the President and Director of Alii Financial.

20. In an effort to approve the Loan, Mr. Vroom, and by implication, Alii Financial and Priority One, either instructed his employee, Sonia Evans ("Ms. Evans") to draft or he drafted himself the following documents:

    a. a memorandum to be signed by Ms. Koga entitled "Letter of Refinancing Justification" (hereinafter "Koga Memorandum"),

    b. a memorandum to be signed by Ms. Ganitano entitled "Ichiyo Koga Refinancing Justification" (hereinafter "Ganitano Memorandum"),

    c. a Uniform Residential Loan Application,

    d. a Tenant Estoppel Certificate,

   e. Rental Agreement, and

   f. a HUD Settlement Agreement.

(collectively referred to as "Loan Documents").

 21. Eastern relied upon the Loan Documents in deciding to enter into the loan with the Trust.

 22. Mr. Vroom instructed Ms. Evans to:

  a. draft a Rental Agreement using her mother, Dorothy Evans', information. This Rental Agreement showed that a "Dorothy Evans" resided at 94-271 Hanawai Circle, Waipahu, Hawaii 96797 ("Property");

  b. sign "Dorothy Evans" on the document entitled "Tenant Estoppel Certificate" .,

  c. draft a Memorandum to be signed by Mrs. Koga entitled "Letter of Refinancing Justification" (hereinafter "Koga Memorandum");

  d. draft a memorandum to be signed by Mrs. Ganitano entitled "Ichiyo Koga Refinancing Justification" (hereinafter "Ganitano Memorandum").

 23. Mr. Vroom, made the following representations which he knew to be false:

  a. With regard to the Koga Memorandum, that:

   i. The Loan was to provide crucial financial assistance to Ms. Ganitano;
   ii. Ms. Koga desired to downsize to a smaller home;
   iii. The Property was receiving rental income of $2,000 per month; and

iv. Ms. Ganitano's intention was to place the Property on the market for sale.

b. With regard to the Ganitano Memorandum:

   i. Ms. Koga and Ms. Ganitano's desired to downsize their residence;
   ii. That the loan would be used to renovate the Ganitano Residence for its sale;
   iii. That the Property was being rented as of March 3, 2008; and
   iv. That the Property was receiving rental income of $2,000 per month;

c. With regard to the Uniform Residential Loan Application:

   i. That the Property was an investment rather than a residence;
   ii. That Ms. Koga was residing at the Ganitano Residence rather than the Property; and
   iii. That the Property was generating gross rental income of $2,000 per month;

d. With regard to the HUD Settlement Statement:

   i. That Ms. Koga possessed a bank account at Bank of America;
   ii. That the Loan proceeds would be received by Ms. Koga through her Bank of America account;
   iii. That Bank of America account no. XXXXXXX149 belonged to Ms. Koga; and
   iv. Priority One Escrow is or was related to Ms. Koga.

e. With regard to the Tenant Estoppel Certificate:

   i. That the Property was being leased by a "Dorothy Evans" for $2,000 per month.

f. With regard to the Rental Agreement:

    i. That the Property was being leased for $2,000 by "Dorothy Evans".

24. The foregoing representations made by Mr. Vroom were false.

25. Mr. Vroom, and by implication Alii Financial and Priority One, knew Eastern would rely upon the foregoing fraudulent representations when Eastern entered into the Loan with the Trust and as a result, Eastern has been denied the amounts owed to it under the Promissory Note and Mortgage and was subject to the Complaint filed by Plaintiff.

26. As of January 27, 2014, Eastern is owed the following amounts under the Loan Documents:

| CHARGE | AMOUNT |
| --- | --- |
| Principal Balance | $271,771.66 |
| Interest | $284,450.20 |
| Late Charge(s) | $9,849.43 |
| Add-Negative Escrow | -$14,294.82 |
| Interest-Neg Escrow | $6,156.50 |
| Release Recording Fee | $90.00 |
| Other: BPO/Appraisal Fees | $200.00 |
| **Total Due as of 1/27/14** | **$586,811.61** |

27. The Per diem interest after January 27, 2014 is $190.72

28. As of January 27, 2014, Eastern has incurred $171,129.13 in attorneys' fees and costs as a result of the instant litigation.

29. Instead of the loan funds ($237,407.16) going directly to Mrs. Koga, the loan funds went to Mr. Vroom's company, Priority One Debt Relief Services, LLC.

30. Alii Financial and Priority One were used to perpetrate a fraud against Eastern and induce Eastern to enter into the loan transaction with the Trust.

31. Recognition of the corporate fiction would result in substantial injustice and inequity to Eastern.

32. Alii Financial and Priority One are alter egos of Mr. Vroom.

33. Ms. Ganitano signed a Guaranty Agreement on March 6, 2008, guaranteeing the Loan to the Trust.

34. Ms. Ganitano breached the terms of the Guaranty Agreement, in which she agreed to guarantee payment of all sums due and owing Eastern for the Loan.

35. Ms. Ganitano has neglected, failed, or refused to make payments to Third-Party Plaintiff Eastern and amounts due for the Loan. As a result of Eastern is owed damages for Ms. Ganitano's failure to pay pursuant to the Guaranty Agreement.

36. Ms. Ganitano made the following intentional false representations to Eastern knowing they were false and/or was without knowledge as to their truth or falsity when they were made:

a. With regard to the Ganitano Memorandum which she signed:

   i. That Mrs. Koga and Ms. Ganitano desired to downsize their residence;

   ii. That the loan would be used to renovate the Ganitano Residence for its sale;

   iii. That the Property was being rented as of March 3, 2008; and

   iv. That the Property was receiving rental income of $2,000 per month.

b. With regard to the Uniform Residential Loan Application, dated March 6, 2008 which she signed:

   i. That the Property was an investment rather than a residence;

   ii. That Mrs. Koga was residing at the Ganitano Residence rather than the Property; and

   iii. That the Property was generating gross rental income of $2,000 per month.

c. Ms. Ganitano transmitted to Eastern the Tenant Estoppel Certificate on February 15, 2008 which reflected that the Property was being leased by a "Dorothy Evans" for $2,000 per month.

d. Ms. Ganitano transmitted to Eastern Transmitted the Rental Agreement on February 11, 2008, which was purportedly signed by Ms. Koga and a "Dorothy Evans", and reflected that the property was being leased for $2,000 to a "Dorothy Evans".

37. The Property was not being rented to a "Dorothy Evans" for $2,000 per month, the Property was not an investment Property but Mrs. Koga's residence, the Property was not generating and rental income, the loan to the Trust was not

going to be used to renovate the Ganitano Residence for its sale, and Ms. Ganitano and Mrs. Koga had no intention of downsizing.

38. Ms. Ganitano intended to and did induce Eastern to enter into the Loan with the Trust, by making the foregoing intentional false representations.

39. Eastern relied upon Ms. Ganitano's intentional false representations regarding the Property when Eastern entered into the Loan.

40. As a result of Eastern's reliance upon Ms. Ganitano's intentional false representations, Eastern was denied the amounts owed to it under, among others, the Promissory Note and Mortgage.

41. The Court takes judicial notice of Ms. Ganitano's "Plea of Guilty to the Felony Information" (mortgage fraud under 18 USC §1014 against Eastern) before the Honorable Leslie E. Kobayashi in USA v. Ganitano, CR No. 13-01015LEK (D. Haw.) as additional evidence supporting her fraud against Eastern.

42. By reason of the facts above set forth and alleged, Eastern is entitled to default judgment against Third-Party Defendants for the amounts of $586,811.61, plus accrued interest, as well as attorneys' fees and costs in the amount of $171,129.13.

## CONCLUSIONS OF LAW

43. To the extent that the foregoing findings of fact are more properly conclusions of law, they shall be treated as such, and, to the extent that the following are more properly findings of fact, they shall be treated as such.

44. "With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true." Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002); see DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9h Cir. 1987) see also Fed. R. Civ. P. 8(b)(6). The entry of default conclusively establishes the facts as to liability, but not damages. See Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977). While the court may conduct a hearing to determine damages, see Fed. R. Civ. P. 55(b)(2), the court can rely on evidence submitted by Plaintiffs Fed. R. Civ. P. 55(b)(2); see Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).

45. A plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right. See Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003). As a general rule, "any doubts as to the propriety of a default are usually resolved against the party seeking a default

judgment." VonGrabe v. Sprint PCS, 312 F. Supp. 2d 1313,1319 (S.D. Cal. 2004) (citing Pena v. Seguros La Commercial, S.A., 770 F.2d 811,814 (9th Cir. 1985)).

    46.    In determining whether to grant default judgment, the court should consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Twentieth Century Fox Film Corp. v. Streeter, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006) (quoting Eitel v. McCool, 782 F.2d 1470,1471-72 (9th Cir. 1986)). See also Parr v. Club Peggy, Inc., Civ. No. 11-00505 JMS-BMK, 2012 U.S. Dist. LEXIS 24785 (USDC HI 2012).

    47.    The Eitel factors favor Eastern:

    a. Third-Party Defendants' failure to answer or otherwise appear in this action as to either the initial Complaint or the First Amended Complaint prejudices Eastern's ability to achieve any decision in this action and to do further discovery;

    b. Eastern has demonstrated that Third-Party Defendants made intentional false representations to Eastern to induce Eastern to

enter into the Loan (even if this Court did not find the representations made to Eastern by Third-Party Defendants were fraudulent, this Court would still find that they were negligently made), that Ms. Ganitano is in default under the terms of the Guaranty Agreement, and that Alii Financial, Priority One, and Mr. Vroom have used a corporate alter ego to defraud Eastern;

c. Eastern's First Amended Third-Party Complaint sufficiently sets forth the elements to support the claims for fraud and misrepresentation and negligent misrepresentation against Third-Party defendants; breach of contract under the March 6, 2008 Guaranty Agreement as to Ms. Ganitano; and for personal liability as to Mr. Vroom;

d. The sum of money at stake is not disproportionately large;

e. There is no possibility of disputed material facts since all well-pleaded facts in the complaint are taken as true, except those related to damages. <u>TeleVideo Sys., Inv.</u>, 826 F.2d at 917-918;

f. Default was not due to excusable neglect given the significant amount of time that elapsed since Eastern's service of its initial Third-Party Complaint and subsequent First Amended Third-Party Complaint;

    g. Although the last factor, the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits, favors denial of the motion, on balance, the record strongly favors granting the default.

48. The conclusive facts established by Third-Party Defendants' failure to respond to Eastern's well-pled allegations of the use of the corporation as an alter ego to defraud Eastern into entering into the Loan make it appropriate to enter judgment jointly and severally between Alii Financial, Priority One, and Mr. Vroom as to the fraud and misrepresentation and negligent misrepresentation. "Generally speaking, a corporation will be deemed the alter ego of another where recognition of the corporate fiction would bring about injustice and inequity or when there is evidence that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim." Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawaii 224, 241-42, 982 P.2d 853, 870-71 (1999) (citations and quotation marks omitted), superseded by statute on other grounds, Haw. Rev. Stat. § 4802(e), as recognized in Davis v. Four Seasons Hotel Ltd., 122 Hawaii 423, 429, 228 P.3d 303, 309 (2010).

Attorneys' Fees and Costs

49. Eastern also seeks his reasonable attorneys' fees and costs of pursing this matter.

50.     "Ordinarily, attorneys' fees cannot be awarded as damages or costs unless so provided by statute, stipulation, or agreement." Stanford Carr Dev. Corp. v. Unity House,Inc., 111 Hawai'i 286, 305, 141 P.3d 459,478 (2006). However,

> where the wrongful act of the defendant has involved the plaintiff in litigation with others, or placed him in such relation with others as makes it necessary to incur expenses to protect his interest, such expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act, and may be recovered as damages. In this regard, 1 S. Speiser, Attorneys' Fees, § 13:4 (1973), spells out the necessary conditions for the exception to take effect:
>
> > In order to recover attorneys' fees under this principle, the plaintiff must establish: (1) that the plaintiff had become involved in a legal dispute either because of a breach of contract by the defendant, or because of defendant's tortious conduct, that is, that the party sought to be charged with the fees was guilty of a wrongful or negligent act or breach of agreement; (2) that the litigation was with a third party, not with the defendant from whom the fees are sought to be recovered; (3) that the attorneys' fees were incurred in that third-party litigation; and (4) whether the fees and expenses were incurred as a result of defendant's breach of contract or tort, that they are the natural and necessary consequences of the defendant's act, since remote, uncertain, and contingent consequences do not afford a basis for recovery....

Uyemura v. Wick, 57 Haw. 102 (Haw. 1976).

51.     The fraud committed by Third-Party Defendants caused Eastern to be involved in underlying litigation with Plaintiff and required Eastern to file its

16

Third-Party Complaint against Ms. Evans, Ms. Ganitano, Mr. Vroom and Alii Financial and Priority One Debt Relief Services in order to protect its interests, including its interest as a secured creditor on the Property.

52. The fees and costs being sought are a natural and necessary consequence of Third-Party Defendants' fraud.

53. Even if Eastern's attorneys' fees and costs were not recoverable under Uyemura v. Wick, 57 Haw. 102 (Haw. 1976), Eastern is still entitled to recover its attorneys' fees and costs as punitive damages.

> Punitive damages are "'damages assessed in addition to compensatory damages for the purpose of punishing the defendant for aggravated or outrageous misconduct and to deter the defendant and others from similar conduct in the future.'" Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Directors v. Venture 15, Inc., 115 Haw. 232, 297, 167 P.3d 225, 290 (2007) (quoting Masaki v. Gen. Motors Corp., 71 Haw. 1, 6, 780 P.2d 566, 570 (1989). In order to recover punitive damages,
>
> the plaintiff must prove by clear and convincing evidence that the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.
>
> In determining whether an award of punitive damages is appropriate, the inquiry focuses primarily upon the defendant's mental state, and to a lesser degree, the nature of his conduct.

> ...[T]o justify an award of punitive damages, a positive element of conscious wrongdoing is always required. Thus, punitive damages are not awarded for mere inadvertence, mistake, or errors of judgment. Something more than the mere commission of a tort is always required for punitive damages.

Valvanis v. Milgroom, 2009 U.S. Dist. LEXIS 45643, 52-55 (D. Haw. June 1, 2009) (citation and quotations signals omitted).

54. Eastern has established by clear and convincing evidence the willful misconduct by Third-Party Defendants.

55. The fraud perpetrated by Third-Party Defendants, including their receipt of the loan funds, warrants an award of Eastern's attorneys' fees and costs as punitive damages.

56. Eastern has shown by clear and convincing evidence that Third-Party Defendants acted with such malice as implies a spirit of mischief or criminal indifference to civil obligations and that Third-Party Defendants engaged in willful misconduct sufficient to justify an award of attorneys' fees.

57. A reasonable measure of punitive damages is the attorneys' fees incurred by Eastern as a result of this litigation.

58. Even if Eastern could not recover its attorneys' fees and costs under Uyemura or as punitive damages, Eastern would still recover the majority of its attorneys' fees against Third-Party Defendants under the assumpsit statute located

at Haw. Rev. Stat. § 607-14 as a result of Ms. Ganitano's breach of the Guaranty Agreement and the Plaintiff s underlying breach of contract action against Eastern which required Eastern to implead Third-Party Defendants.

59. Eastern claims damages of $586,812.61. Under the 25% limitation of HRS §607-14, Eastern is entitled to the maximum attorneys fees amount of $146,703.15 if Eastern's attorneys' fees were solely limited under the assumpsit statute.

60. Courts routinely award costs on default judgment. See, e.g., Discovery Comm., Inc. v. Animal Planet, Inc., 172 F. Supp. 2d 1282, 1292 (C.D. Cal. 2001).

61. The Court has determined that the appropriate award of attorneys' fees and costs in this matter is $171,129.13.

62. Eastern's attorneys' fees and costs are reasonable under the Lodestar calculation and the factors articulated in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975).

## RECOMMENDATION

Based upon the foregoing findings of fact and conclusions of law, it is hereby recommended that a Default Judgment in the form attached hereto as Exhibit A, be entered in Eastern's favor and against Third-Party Defendants Alii Financial Corporation, Priority One Debt Relief Services, LLC, William 1. Vroom, and Janice M.K. Ganitano, jointly and severally.

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, April 7, 2014.



      /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

WENDELL TATSUMI KOGA, individually, as attorney in fact for Ichiyo Eko Koga, and as trustee of the William Tsugio Koga and Ichiyo Eko Koga Revocable Living Trust, dated February 4,1991 v. EASTERN SAYINGS BANK, FSB, et al., CV11-00123 DKW/BMK