IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| WENDELL TATSUMI KOGA, individually, as attorney in fact for Ichiyo Eko Koga, and as trustee of the William Tsugio Koga and Ichiyo Eko Koga Revocable Living Trust, dated February 4, 1991,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>EASTERN SAVINGS BANK, FSB,<br><br><br>　　　　Defendant.<br>_____<br>EASTERN SAVINGS BANK, FSB,<br><br>　　　　Third-Party<br>　　　　Plaintiff,<br><br>　vs.<br><br>WILLIAM J. VROOM; ALII FINANCIAL CORPORATION; PRIORITY ONE DEBT RELIEF SERVICES, LLC; JANICE M. K. GANITANO; and SONIA M. EVANS,<br><br>　　　　Third-Party<br>　　　　Defendants. | CIVIL NO. 11-00123 DKW-BMK<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW GRANTING EASTERN SAVINGS BANK'S MOTION FOR SUMMARY JUDGMENT AGAINST SONIA M. EVANS** |

# FINDINGS OF FACT AND CONCLUSIONS OF LAW GRANTING EASTERN SAVINGS BANK'S MOTION FOR SUMMARY JUDGMENT AGAINST SONIA M. EVANS

Before the Court is Defendant and Third-Party Plaintiff Eastern Savings Bank, FSB's motion for summary judgment against Sonia M. Evans. Evans did not oppose the motion. After careful consideration of the supporting memoranda, the accompanying documentation, and the relevant legal authority, the motion is hereby GRANTED.

## FINDINGS OF FACT

1. This Court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367 based on the underlying complaint which confers jurisdiction pursuant to 15 U.S.C. §§ 1640(e) and 1692k, and 28 U.S.C. §§ 1331, 1332, and 1337. Venue is proper in this District under 28 U.S.C. § 1391(a) and (c).

2. Eastern filed its Third-Party Complaint on August 14, 2012.

3. Eastern filed its First Amended Third-Party Complaint on June 4, 2013 against, among others, Third-Party Defendant Sonia M. Evans ("Ms. Evans") which alleged, among other things, fraud and misrepresentation.

4. On July 20, 2013, Ms. Evans served on Eastern her Answer to Eastern's First Amended Third-Party Complaint ("Answer").

5. Ms. Evans did not file her Answer with the Court.

6. On January 30, 2014, Eastern filed its Motion for Summary Judgment against Ms. Evans.

7. This is an action based on an underlying $275,000 loan ("Loan") made by Eastern on March 6, 2008 to the William Tsugio Koga and Ichiyo Eko Koga Revocable Living Trust, dated February 4, 1991, a Hawaii Trust (hereinafter "Trust").

8. The Loan was evidenced by a Promissory Note signed by Mrs. Ichiyo Eko Koga ("Mrs. Koga") as Trustee of the Trust, in the principal amount of $275,000.

9. The Loan was secured by a Mortgage, Assignment of Rents and Security Agreement, signed by Mrs. Koga as Trustee of the Trust ("Mortgage").

10. At the time the Loan was made, Mrs. Koga or Janice M.K. Ganitano were the trustees of the Trust.

11. Ms. Ganitano is the daughter of Mrs. Koga and a former co-worker and friend of Ms. Evans.

12. On December 27, 2013, the United States of America filed an Information against Ms. Evans, charging her with the felony of mortgage fraud in violation of 18 U.S.C. § 1014, for defrauding Eastern with respect to the Loan. *United States of America v. Evans*, CR No. 13-01111 LEK (D. Haw. December 27, 2013) ("Criminal Case").

13. On January 13, 2014, Ms. Evans entered a plea of guilty to the Information in the Criminal Case. At the hearing, Ms. Evans admitted:

    a. That she made material false statements for the purpose of inducing Eastern to extend the Loan in order to help her friend "Janice," and

    b. That she completed a rental agreement, knowing that the information was incorrect and would be submitted to Eastern in support of the Loan.

14. Ms. Evans admitted in her Answer to making the following false representations of material facts to Eastern:

    a. Regarding the Koga Memorandum, dated February 15, 2008:

        i. The Loan was to provide crucial financial assistance to Ms. Ganitano;

        ii. Mrs. Koga desired to downsize to a smaller home;

        iii. The property which was to be security for the loan, 94-271 Hanawai Circle, Waipahu, HI 96797 ("Property"), was receiving rental income of $2,000 per month; and

        iv. Ms. Ganitano's intention was to place the Property on the market for sale.

    b. Regarding the Ganitano Memorandum, dated March 3, 2008:

        i. Mrs. Koga and Ms. Ganitano desired to downsize their residence;

        ii. That the loan would be used to renovate the Property in preparation for its sale;

      iii.      That the Property was being rented as of March 3, 2008; and

      iv.      That the Property was receiving rental income of $2,000 per month.

c. Regarding the Rental Agreement, signed December 15, 2007:

      i.      That the signature on the Rental Agreement belonged to Dorothy Evans, and

      ii.      That Dorothy Evans was leasing the Property for $2,000 per month.

d. Regarding the Tenant Estoppel Certificate, dated February 15, 2008:

      i.      That the signature on the Rental Agreement belonged to Dorothy Evans, and

      ii.      That Dorothy Evans was leasing the Property for $2,000 per month.

e. That the Property was being leased by a "Dorothy Evans" for $2,000 per month at the time Sonia Evans transmitted the Tenant Estoppel Certificate on February 15, 2008.

f. That the Property was being leased for $2,000 by Dorothy Evans at the time Sonia Evans transmitted the Rental Agreement on February 11, 2008 that was purportedly signed by Mrs. Koga and Ms. Evans.

g. That Dorothy Evans' genuine signature appears on the Rental Agreement and Tenant Estoppel Certificate.

15. In her deposition testimony, Ms. Evans admitted:

   a. That the Rental Agreement and Tenant Estoppel Certificate did not contain her mother Dorothy Evans' genuine signature but rather her mother's forged signature, as signed by herself, Sonia Evans;

   b. That she faxed the Tenant Estoppel Certificate; and

   c. That she drafted the Koga Memorandum and Ganitano Memorandum.

16. At Ms. Evans' initial appearance in the Criminal Case, she admitted that "[i]n an effort to help my friend, I completed a rental agreement, knowing that information was incorrect."

17. Ms. Evans admitted the following allegation contained in the Amended Third-Party Complaint:

   Upon information and belief, based on the allegations in the Complaint and testimony from Ms. Ganitano's Deposition, the Property was not an investment property but Mrs. Koga's residence, the Property was not being rented to a "Dorothy Evans" for $2,000.00 per month, and Ms. Ganitano and Mrs. Koga had no intention of downsizing.

18. The evidence establishes that the Property was not rented to Dorothy Evans.

19. Ms. Evans' Answer, deposition testimony, and guilty plea establish that she knew the foregoing representations were false or were made without knowing their truth or falsity.

20. Ms. Evans knew her mother Dorothy Evans did not sign the Rental Agreement or Tenant Estoppel Agreement since Ms. Evans admitted to forging her mother's signature on both documents.

21. As to the Koga Memorandum and Ganitano Memorandum, Ms. Evans drafted these documents without knowledge as to their truth or falsity.

22. Ms. Evans knew that Eastern would rely on her false representations.

23. Ms. Evans knew that all of the documents she was preparing were to be submitted in order to induce Eastern to extend the Loan to the Trust.

24. Ms. Evans admitted the following allegation contained in Eastern's First Amended Third-Party Complaint:

> Ms. Evans knew the submission of the foregoing referenced documents were for the purpose of Third-Party Plaintiff ESB making a loan to Mrs. Koga and Ms. Ganitano.

25. At Ms. Evans' initial appearance in the Criminal Case, she admitted knowing that the Rental Agreement was going to be submitted in support of the Loan:

> The Court: And that as part of the documents that was being submitted in support of the loan to refinance the mortgage, you understood that this false rental agreement was going to be included?
>
> The Defendant: Yes, Ma'am.

26. Ms. Evans testified that she knew the Rental Agreement and Tenant Estoppel Certificate were being submitted to Eastern in support of the Loan.

27. Ms. Evans possessed the fraudulent intent to deceive Eastern.

28. Ms. Evans intended to deceive Eastern when she made the representations above.

29. Ms. Evans' representations were willful.

30. Ms. Evans' guilty plea alone is sufficient to establish her fraudulent intent to deceive Eastern. *See Santa Barbara Capital Mgmt. v. Neilson (In re Slatkin)*, 525 F.3d 805, 812–814 (9th Cir. 2008).

31. Notwithstanding the guilty plea, Ms. Evans' admissions and testimony discussed above also establish her intent to defraud Eastern, with the goal of helping her friend, Ms. Ganitano.

32. For drafting and preparing documents containing fraudulent representations relied upon by Eastern, Ms. Evans personally received $3,000.

33. The Court takes judicial notice of Ms. Evans' Information and "Plea of Guilty to the Felony Information" (mortgage fraud under 18 USC § 1014) before the Honorable Leslie E. Kobayashi in *United States v. Evans*, CR No. 13-01111 LEK (D. Haw.) as additional evidence supporting Ms. Evans' fraud against Eastern.

34. The Court takes judicial notice of Ms. Ganitano's Information and "Plea of Guilty to the Felony Information" (mortgage fraud under 18 USC § 1014) before the Honorable Leslie E. Kobayashi in *United States v.Ganitano*, CR No. 13-01015 LEK (D. Haw.).

35. Eastern detrimentally relied upon the Koga Memorandum, Ganitano Memorandum, Rental Agreement, and Tenant Estoppel Agreement when it decided to loan the Trust $275,000. Eastern's reliance was justifiable.

36. Eastern relied upon the information that the Property was being rented to a Dorothy Evans for $2,000 and therefore, that Mrs. Koga was not residing at the Property.

37. Had Eastern known that the Property was not being rented and that the Property was not generating income, Eastern would not have made the Loan to the Trust.

38. As a result of Ms. Evans' fraudulent misrepresentations, Eastern suffered substantial damages.

39. Based on the Loan documents, Eastern is owed $634,991.17 on the Loan, as of April 1, 2014, as follows.

| CHARGE | AMOUNT |
|---|---|
| Principal Balance | $266,814.65 |
| Interest | $181,278.89 |
| Late Charge(s) | $122.40 |

| Add-Negative Escrow | $4,345.42 |
| --- | --- |
| Interest-Neg Escrow | $6,841.91 |
| Subtotal Due as of 4/01/14: | $459,403.27 |
| Attorneys' Fees/Costs | $175,587.90[1] |
| Total | $634,991.17 |

40. The per diem interest on the Subtotal due after April 1, 2014 is $180.77.[2]

41. As a result of Ms. Evans' fraudulent misrepresentations, Eastern incurred substantial attorneys' fees and costs to defend itself and to bring third-party claims in this action.

42. Based on the foregoing undisputed facts, Eastern is entitled to summary judgment against Third-Party Defendant Sonia M. Evans for the total amount of $634,991.17, inclusive of its attorneys' fees and costs of $175,587.90, plus accrued interest, with per diem interest of $180.77 accruing on $459,403.27 of the $634,991.17 judgment amount from April 1, 2014 up to the date Judgment is entered.

---

[1] Attorneys fees and costs incurred through February 26, 2014.
[2] The per diem interest does not include the attorneys' fees and costs.

## CONCLUSIONS OF LAW

43. To the extent that the foregoing findings of fact are more properly conclusions of law, they shall be treated as such, and to the extent that the following are more properly findings of fact, they shall be treated as such.

44. Ms. Evans' Answer to Eastern's First Amended Third-Party Complaint, deposition testimony, and guilty plea in the Criminal Case all establish Ms. Evans' fraud and misrepresentation, designed to assist her friend, Ms. Ganitano, in obtaining the Loan for the Trust.

45. Ms. Evans' guilty plea to felony mortgage fraud, in violation of 18 U.S.C. § 1014, is admissible under Federal Rules of Evidence ("F.R.E.") 803(22) and 807. *See Rosen v. Neilson (In re Slatkin)*, 310 B.R. 740. 744–45 (C.D. Cal. 2004), aff'd, *Santa Barbara Capital Mgmt. v. Neilson (In re Slatkin)*, 525 F.3d 805 (9th Cir. 2008).

46. Ms. Evans' guilty plea establishes that she knowingly completed the Rental Agreement containing false representations (i.e., that Dorothy Evans was leasing the Property for $2,000 a month), and that she knowingly submitted the Rental Agreement to Eastern, intending that Eastern rely on it, in order to assist Ms. Ganitano.

47. Ms. Evans' admissions in the plea agreement that she submitted the Rental Agreement containing false representations to Eastern constitute direct evidence of fraudulent intent.[3]

48. Ms. Evans' admissions during the course of her guilty plea hearing in the Criminal Case are trustworthy because, among other things:

    a. Ms. Evans' plea was made under oath,

    b. Ms. Evans was represented by counsel, Ms. Dana S. Ishibashi, during the plea hearing; and

    c. The judge during the plea hearing found Ms. Evans to be "fully competent and capable of entering an informed plea" and that Ms. Evans' plea was "knowing and voluntary."

49. Because of her guilty plea in the Criminal Case, Ms. Evans is collaterally estopped from contesting her fraud against Eastern related to the Loan. *See United States v. Real Property Located at Section 18*, 976 F.2d 515, 518 (9th Cir. 1992).

50. Ms. Evans' Criminal Case involved a plea to a felony offense carrying potential penalties of up to 30 years imprisonment, a fine of up to one million dollars, a term of supervised release of up to five years, restitution, and a $100 mandatory special assessment.

---

[3] Ms. Evans' admissions contained in her deposition testimony and Answer are probative of these issues as well.

51. Ms. Evans pled guilty in the Criminal Case, thereby waiving her right to, and bypassing the need for, a trial.

52. The same fraudulent representation issues included in the Information in the Criminal Case are also contained in Eastern's Third-Party Complaint.

53. Collateral estoppel is being asserted against Ms. Evans, the same person who pled guilty to mortgage fraud in the Criminal Case.

54. Even if Ms. Evans' guilty plea was found to be inadmissible, Ms. Evans' Answer to Eastern's First Amended Third-Party Complaint and deposition testimony are sufficient to find Ms. Evans liable for fraud and misrepresentation as to Eastern.

55. Ms. Evans made multiple false representations to Eastern related to the Rental Agreement, Tenant Estoppel Certificate, Koga Memorandum, and Ganitano Memorandum.

56. Ms. Evans made these multiple false representations to Eastern with knowledge of their falsity, or without knowing their truth or falsity.

57. Ms. Evans made these multiple false representations with the knowledge Eastern would rely upon them.

58. Eastern detrimentally relied upon the false representations made by Ms. Evans when it entered into the Loan transaction.

59. Eastern has established by clear and convincing evidence the elements for fraud committed by Ms. Evans. *See Stanton v. Bank of Am., N.A.*, 834 F. Supp. 2d 1061, 1085 (D. Haw. 2011).

60. Based on the foregoing, Eastern's Motion for Summary Judgment is granted.

61. Judgment shall be entered against Sonia M. Evans in the total amount of $634,991.17 with per diem interest of $180.77 accruing on $459,403.27 of the $634,991.17 judgment amount from April 1, 2014 up to the date Judgment is entered.

62. Eastern's attorneys' fees and costs of $175,587.90, which are included in the $634,991.17 judgment amount, are reasonable under the Lodestar calculation and the factors articulated in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975).

## **CONCLUSION**

Eastern's motion for summary judgment against Sonia M. Evans is hereby GRANTED. The Clerk of Court is directed to enter judgment in favor of Eastern and against Sonia M. Evans.

IT IS SO ORDERED.

DATED: HONOLULU, HAWAIʻI, May 9, 2014.

Derrick K. Watson
United States District Judge

---

Koga v. Eastern Savings Bank; CV 11-00123 DKW/BMK; FINDINGS OF FACT AND CONCLUSIONS OF LAW GRANTING EASTERN SAVINGS BANK'S MOTION FOR SUMMARY JUDGMENT AGAINST SONIA M. EVANS